**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000448**
**20-JUN-2022**
**07:49 AM**
**Dkt. 49 SO**

NO. CAAP-20-0000448

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MICHAEL VENTRELLA, Petitioner-Appellant,
v.
STATE OF HAWAI'I, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CPN-19-0000003)

### SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Self-represented Petitioner-Appellant Michael **Ventrella** appeals from the "Findings of Fact; Conclusions of Law; and **Order Denying Petition** for Post-Conviction Relief" entered by the Circuit Court of the Third Circuit on June 15, 2020.[1] For the reasons explained below, we affirm the Order Denying Petition.

On August 7, 2017, a grand jury returned a 15-count indictment against Ventrella. Pursuant to a plea agreement, Ventrella pleaded guilty to Attempted Promoting a Dangerous Drug (heroin) in the First Degree in violation of Hawaii Revised Statutes (**HRS**) §§ 705-500 and 712-1241(1)(a). The circuit court granted the State's motion to nolle prosequi the other 14 counts. The "**Judgment** of Conviction and Sentence" was entered on

---

[1] The Honorable Melvin H. Fujino presided.

April 25, 2018; Ventrella was sentenced to an indeterminate term of 20 years in prison.  He did not take a direct appeal.

Ventrella appeared before the Hawaii Paroling Authority (**HPA**) on January 14, 2019, for his minimum term hearing.  The HPA placed Ventrella in a Level III classification[2] and set an 11-year minimum term.

Ventrella filed a **"Petition** to Vacate, Set Aside, or Correct Illegal Sentence Through a Writ of Habeas Corpus Pursuant to [Hawaiʻi Rules of Penal Procedure (**HRPP**)] Rule 40" on November 18, 2019.  The Petition was heard on May 29, 2020.  The Order Denying Petition was entered on June 15, 2020.  This appeal followed.

Ventrella raises the following issues on appeal:[3]

"1.   Was [Ventrella] due the protection provided in the Hawaii Supreme Court's ruling in <u>Lewi v. State</u>?"

"2.   Does the mandatory 'floor' of each Level of Punishment assigned by the HPA equate to a mandatory minimum sentence?"

"3.   Does [Ventrella] have a right to a minimum term sentence that is uniform to those issued to similarly-situated defendants?"

"4.   Is there a statutory mandate for a verbatim record of [HPA] hearings?" and

"5.   Did [Ventrella] have a constitutional right to effective legal representation at his evidentiary hearing?"

---

[2]   "To set a minimum sentence within the maximum term of imprisonment range set by the sentencing court, the HPA determines an offender's 'level of punishment' at, from lowest to highest, Level I, II, or III."  <u>Lewi v. State</u>, 145 Hawaiʻi 333, 347 n.20, 452 P.3d 330, 344 n.20 (2019).

[3]   Ventrella's opening brief does not comply with Rule 28(b)(4) of the Hawaiʻi Rules of Appellate Procedure (**HRAP**).  However, to promote access to justice, the Hawaiʻi Supreme Court instructs that documents filed by self-represented litigants should be interpreted liberally, and self-represented litigants should not automatically be foreclosed from appellate review because they fail to comply with court rules. <u>Erum v. Llego</u>, 147 Hawaiʻi 368, 380-81, 465 P.3d 815, 827-28 (2020).  Accordingly, we address what we discern to be Ventrella's points and arguments.

The disposition of a petition under HRPP Rule 40 after a hearing is based on findings of fact and conclusions of law; we review the circuit court's findings of fact for clear error, and its conclusions of law de novo. <u>Coulter v. State</u>, 116 Hawai‘i 181, 184, 172 P.3d 493, 496 (2007). A court reviewing an HPA minimum term decision must determine whether "the HPA has failed to exercise any discretion at all, acted arbitrarily and capriciously so as to give rise to a due process violation, or otherwise violated the prisoner's constitutional rights." <u>Id.</u> (citation omitted). For claims of procedural violations, a court will determine whether the HPA conformed with HRS § 706-669 and complied with its own guidelines, which it is required to establish by statute. <u>Id.</u> (citing HRS § 706-669(8) (1993)).

HRS § 706-669 (2014) provides, in relevant part:

> **Procedure for determining minimum term of imprisonment**. (1) When a person has been sentenced to an indeterminate . . . term of imprisonment, the [HPA] shall . . . hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole.
>
> . . . .
>
> (3) The prisoner shall be given reasonable notice of the hearing under subsection (1) and shall be permitted to be heard by the authority on the issue of the minimum term to be served before the prisoner becomes eligible for parole. In addition, the prisoner shall:
>
> (a) Be permitted to consult with any persons the prisoner reasonably desires, including the prisoner's own legal counsel, in preparing for the hearing;
>
> (b) Be permitted to be represented and assisted by counsel at the hearing;
>
> (c) Have counsel appointed to represent and assist the prisoner if the prisoner so requests and cannot afford to retain counsel; and
>
> (d) Be informed of the prisoner's rights under paragraphs (a), (b), and (c).
>
> . . . .
>
> (6) A verbatim stenographic or mechanical record of the hearing shall be made and preserved in transcribed or untranscribed form.

. . . .

> (8)    The [HPA] shall establish guidelines for the uniform determination of minimum sentences which shall take into account both the nature and degree of the offense of the prisoner and the prisoner's criminal history and character.  The guidelines shall be public records and shall be made available to the prisoner[.]

**(1)**    Ventrella contends — for the first time on appeal — that he was "due the protection provided in the Hawaii Supreme Court's ruling in" Lewi.  In that case the supreme court announced a new rule: "HPA is required to set forth a written justification or explanation (beyond simply an enumeration of any or all of the broad criteria considered) when it determines that the minimum term of imprisonment for the felony offender is to be set at a Level II or Level III punishment."  Lewi, 145 Hawaiʻi at 348-49, 452 P.3d at 345-46.  The supreme court stated that the new rule applied "to [Lewi], as well as to all cases that are on direct review or not yet final as of the date of this decision." Id. at 349 n.21, 452 P.3d at 346 n.21.  Lewi was decided on November 7, 2019.  Ventrella's minimum term determination was made on January 15, 2019.  The determination was final before Lewi was decided.

Nor was the HPA's determination of Ventrella's minimum term "on direct review" when Lewi was decided.  "The legislature did not expressly provide a means to appeal HPA parole decisions."  Williamson v. Haw. Paroling Auth., 97 Hawaiʻi 183, 189, 35 P.3d 210, 216 (2001).  In Williamson, the supreme court held that a prisoner may seek judicial review of an HPA minimum term determination through a Rule 40 petition.  Id. at 195, 35 P.3d at 222.  Ventrella's HRPP Rule 40 petition was filed on November 18, 2019, after Lewi was decided.  Lewi does not apply to the HPA's determination of Ventrella's minimum term.

**(2)**    Ventrella contends that "the mandatory 'floor' of each Level of Punishment assigned by the HPA equate[s] to a mandatory minimum sentence."  In Star v. State, No. CAAP-17-0000642, 2018 WL 4327325 (Haw. App. Sept. 11, 2018)

(SDO), <u>cert. rejected</u>, SCWC-17-0000642, 2019 WL 181416 (Haw. Jan. 14, 2019), we held:

> the HPA **Guidelines** do not set an initial starting point and increase (or decrease) the minimum term based upon certain criteria, but rather, "[a]ll relevant criteria are evaluated and a level of punishment is determined[.]" The requirement in <u>Alleyne</u>, that facts which increase mandatory minimum sentences be found by a jury beyond a reasonable doubt, does not apply to HPA minimum term hearings.

<u>Id.</u> at *2 (quoting <u>Draizen v. State</u>, No. CAAP-12-0000708, 2015 WL 775031, at *2 (Haw. App. Feb. 24, 2015) (SDO)) (emphasis added). Ventrella's contention lacks merit.

**(3)** Ventrella contends that he had "a right to a minimum term sentence that is uniform to those issued to similarly-situated defendants." He argues that "his minimum term sentence should be set at a comparable number of years to others who were convicted of the same offense in the same fiscal year."

Contrary to Ventrella's argument, the Guidelines require HPA to consider multiple factors when setting minimum terms. The Guidelines were published pursuant to HRS § 706-669(8). <u>Lewi</u>, 145 Hawai'i at 347 n.20, 452 P.2d at 344 n.20. The Guidelines state, in relevant part:

> The criteria [for determining the level at which a minimum term is set] in any given case . . . that will generally receive the greatest weight are the first three listed at each level: Nature of Offense, the Degree of Injury/Loss to Person or Property, and the Offender's Criminal History.

Hawaii Paroling Authority, <u>Guidelines for Establishing Minimum Terms of Imprisonment</u> at 3 (July 1989), https://dps.hawaii.gov/wp-content/uploads/2012/09/HPA-Guidelines-for-Establishing-Minimum-Terms-of-Imprisonment.pdf.

The Guidelines also list other criteria, including: "Character and Attitude of Offender With Respect to Criminal Activity or Lifestyle"; "Efforts Made to Live Pro-Social Life Prior to Commitment to Prison"; "Probation Revocation; Youth Adult Offender"; "Involvement of Offender in Instant Offense(s)"; "Diminished Responsibility"; and "Degree of Provocation,

5

Involvement, or Complicity on the Part of the Victim(s) in the Offense(s)[.]"  Guidelines at 4-5, 8 (bolding omitted).

Although "[t]he purpose of minimum sentencing guidelines is to provide a degree of uniformity and consistency in the setting of minimum terms[,]" see Guidelines at 1, there is no requirement that the minimum terms of prisoners convicted of the same offense in the same fiscal year be uniform.

Ventrella challenges the circuit court's finding of fact no. 11:

> 11.   [Ventrella] does not dispute that his minimum term may fall between 10 to 20 years as a Level III offender.

Ventrella disputes that he is a Level III offender, but the Guidelines clearly provide that the range of minimum terms for a Level III prisoner sentenced to a 20-year indeterminate term is 10-20 years.  See Guidelines at 2.

Ventrella also challenges the circuit court's finding of fact no. 15:

> 15.   [Ventrella]'s belief is that his minimum term sentence should be set at a comparable number of years to others who were convicted of the same offense in the same fiscal year.

As discussed above, this finding was a correct summary of Ventrella's argument.

Ventrella challenges the circuit court's conclusions of law nos. 4, 6, and 7:

> 4.    The Hawaiʻi Paroling Authority is not free to ignore the guidelines it has established.  See Coulter v. State, 116 Haw. 181, 185 (2007).
>
> . . . .
>
> 6.    The uniform determination in sentencing minimum terms as established by § 706-669(8) is not in reference to the average sentencing in a fiscal year, but rather the determination set out by HPA guidelines.  See Haw. Rev. Stat. § 706-669(8) (1993).
>
> 7.    The guidelines do not require Hawaiʻi Paroling Authority to use a certain number of criteria, or mandate what criteria to use.  See id.

These conclusions of law were not wrong, although it would have been more accurate for no. 7 to have stated that the Guidelines do not mandate "which" of the enumerated criteria HPA must use in any given case.

**(4)** Ventrella contends that the HPA violated HRS § 706-669(6) because the transcript of his minimum term hearing (attached as Appendix E to his HRPP Rule 40 petition) contains "broken sentences and disconnected lines of speech (represented by "--" marks) that go beyond the normal stutters, misstatements, and hesitancies of everyday speech." The circuit court concluded:

> 9. A written transcript of a hearing complies with the § 706-669(6), HRS requirement that a verbatim stenographic or mechanical record of the hearing shall be made and preserved in transcribed or untranscribed form. *See* Haw. Rev. Stat. § 706-669(8) (1993).

The circuit court did not err. The transcript was transcribed from an audio tape of the minimum term hearing. An audio tape is a "mechanical record" that complies with HRS § 706-669(6). If Ventrella believes that the written transcript did not accurately disclose what occurred before the HPA, his remedy is prescribed by HRAP Rule 10(e)(1), which provides:

> If any differences arise as to whether the record truly discloses what occurred in the court or agency appealed from, the differences shall be submitted to and settled by that court or agency and the record made to conform to the truth.

**(5)** Ventrella contends that his attorney did not effectively represent him during the circuit court hearing on his HRPP Rule 40 petition. The record does not disclose what transpired at the hearing because Ventrella did not request a transcript of the proceedings as required by HRAP Rule 10(b)(1). A copy of what purports to be the transcript of the circuit court hearing was attached as Exhibit F to Ventrella's opening brief, but we cannot consider it because "[a]nything that is not part of the record shall not be appended to the brief[.]" HRAP Rule

28(b)(10).  In addition, Ventrella failed to comply with HRAP Rule 28(a) ("If a brief raises ineffective assistance of counsel as a point of error, the appellant shall serve a copy of the brief on the attorney alleged to have been ineffective.").  For these reasons, we decline to address Ventrella's contention.

For the foregoing reasons, we affirm the circuit court's Order Denying Petition entered on June 15, 2020.

DATED:  Honolulu, Hawai'i, June 20, 2022.

On the briefs:

Michael Ventrella,
Self-represented Petitioner-
Appellant.

Craig Y. Iha,
Laura K. Maeshiro,
Deputy Attorneys General,
State of Hawai'i,
for Respondent-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge